UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CR-80055-AMC/BER

UNITED STATES OF AMERICA

v.

RAFAEL CASIMIRO PEGUERO-SOTO,

Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and Rafael Casimiro Peguero-Soto (the "defendant") enter into the following agreement:

1.  The defendant agrees to plead guilty to Count 15 of the Indictment, which charges that the defendant, an alien, having previously been removed from the United States on or about December 21, 2021, did enter, and attempt to enter, the United States, knowingly and unlawfully, without the Attorney General of the United States or his/her successor, the Secretary of Homeland Security, having expressly consented to such alien reapplying for admission to the United States, in violation of Title 8, United States Code, Sections 1326(a)(2) and (b)(2).

2.  The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence

1

*RP*

within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. The defendant also understands and acknowledges that as to Count 1, the Court may impose a maximum term of imprisonment of twenty years, up to a $250,000 fine, and a maximum of three years' supervised release.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100.00 will be imposed on the defendant for each count of conviction. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

5. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or

RP

the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

7. This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office, however, will not be required to make this motion and this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

8. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status because the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the defendant's plea may entail, even if the consequence is the defendant's automatic removal from the United States.

9. The defendant is aware that Title 28, United States Code, Section 1291 and Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Sections 1291 and 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this agreement with the defendant's attorney. The defendant further agrees, together with this Office, to request that the Court enter a specific finding that the defendant's waiver of his right to appeal the sentence imposed in this case was knowing

and voluntary.

10. The defendant confirms that the defendant is guilty of the offense to which the defendant is pleading guilty; that the defendant's decision to plead guilty is the decision that the defendant has made; and that nobody has forced, threatened, or coerced the defendant into pleading guilty. The defendant affirms that the defendant has reviewed this Agreement and enters into it knowingly, voluntarily, and intelligently, and with the benefit of assistance by the defendant's attorney.

11. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 4-12-23

By: _____
SHANNON SHAW
ASSISTANT UNITED STATES ATTORNEY

Date: 4-11-23

By: _____
GREGORY MORSE
ATTORNEY FOR DEFENDANT

Date: 4-11-23

By: _____
RAFAEL CASIMIRO PEGUERO-SOTO
DEFENDANT

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CR-80055-AMC/BER

UNITED STATES OF AMERICA

v.

RAFAEL CASIMIRO PEGUERO-SOTO,

Defendant.
_____/

## FACTUAL PROFFER

Defendant Rafael Casimiro Peguero-Soto ("Defendant" or "Peguero-Soto"), his counsel, and the United States agree that, had this case proceeded to trial, the Government would have proved the following facts, among others, beyond a reasonable doubt, and that these facts are true and correct and establish the defendant's guilt of Count 15 of the Indictment.

1. On March 17, 2023, at approximately 7:15 AM, the Palm Beach County Sheriff's Office (PBSO) identified a target of interest (TOI) via maritime radar, traveling on a westerly path. Subsequently, PBSO notified the United States Coast Guard Station Lake Worth Inlet of the TOI. PBSO Marine launched a marked patrol vessel to the area of the Lake Worth Inlet.

2. At approximately 8:26 AM, PBSO Marine made contact with the slowly-moving TOI approximately two miles east of the Lake Worth Inlet. The TOI was a blue 27-foot Proline, cuddy-cabin style vessel, with two outboard engines. PBSO Marine observed approximately four people on deck: two persons sitting behind the console area, and two persons sitting on the rear deck of the vessel. The vessel was moving slowly due to a broken bilge pump.

3. The vessel was operated by a male wearing a red shirt seated directly behind the

1

*RP*

helm. PBSO escorted the vessel to the Lake Worth Inlet to conduct further investigation due to the rough sea conditions. Once they reached that area, PBSO questioned the captain of the vessel as to his identity. The captain identified himself as Jorge Guerra-Lopez ("Guerra-Lopez"). Guerra-Lopez advised PBSO that he did not know the other passengers on the vessel with him.

4. Once PBSO Marine learned that there were more passengers seated in the cabin area of the vessel, those passengers were instructed to exit the cabin and sit in the rear deck area of the vessel. PBSO provided eleven personal flotation devices (PFD), since there were only four PFDs onboard the vessel at the time of the stop. In total, fifteen passengers were found on the boat.

5. United States Coast Guard (USCG) personnel arrived on-scene for operational control. All fifteen occupants were then transferred to the USCG cutter for biometrics processing and analysis.

6. The biometrics results revealed that none of the fifteen foreign nationals onboard had permission or prior authorization to enter the United States and that one individual, Peguero-Soto, had been previously removed from the United States after a prior conviction for an aggravated felony.

7. The alien smuggler, Guerra-Lopez, and the previously deported convicted felon, Peguero-Soto, were taken into custody and brought ashore in Palm Beach County, in the Southern District of Florida. The remaining foreign nationals were repatriated by the USCG.

8. Once ashore, Guerra-Lopez waived his *Miranda* rights and spoke with law enforcement agents. During the interview, Guerra-Lopez made the following statements:

    a. The vessel departed Freeport, Bahamas on March 16, 2023, at approximately 6:00 PM, and was traveling to the United States with the passengers.



    b.    The GPS coordinates were already keyed in for Guerra-Lopez; he was instructed to follow the course coordinates. Once he reached the United States, he intended to beach the vessel.

    c.    He was supposed to be paid $5000.00 by an unidentified person once he arrived in the United States.

    d.    A man known as "Rojo" arranged for Guerra-Lopez to drive the vessel from the Bahamas to the United States with the passengers.

    e.    The other passengers were already onboard the vessel when "Rojo" and another unidentified male dropped Guerra-Lopez off at the vessel.

    f.    There were not enough Preservation Flotation Devices (PFDs) for all passengers on the vessel; however, there was drinking water for them.

    g.    Guerra-Lopez acknowledged that he entered the United States illegally. He also admitted to conducting four previous human smuggling trips from Cuba to Mexico.

9.    GPS data establishes that the vessel left the Bahamas on a direct course to the United States and did not enter United States waters by accident.

10.    The Integrated Automated Fingerprint Identification System (IAFIS), the DHS Fingerprint Identification System (IDENT), a certified fingerprint examiner, as well as the Defendant's DHS Alien File, establish that the Defendant was previously deported from the United States on December 21, 2021, following his conviction for trafficking of narcotics (heroin/morphine/opium), an aggravated felony. Records reveal that in March 2018, the Defendant was sentenced in Massachusetts state court to a sentence not less than eight years and not exceeding ten years.

*RP*

11. No record exists that the Defendant applied for, or received, authorization from the Secretary of Homeland Security or his/her predecessor, the Attorney General of the United States, to reenter the United States.

12. The foregoing facts do not describe all the facts known to the Government in this matter, or fully describe all of the acts the Defendant engaged in, but are offered for the limited purpose of establishing a sufficient factual basis to support the Defendant's plea of guilty to Count 15 of the Indictment.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 4-12-23

By: _____
SHANNON SHAW
ASSISTANT UNITED STATES ATTORNEY

Date: 4-11-23

By: _____
GREGORY MORSE
ATTORNEY FOR DEFENDANT

Date: 4-11-23

By: _____
RAFAEL CASIMIRO PEGUERO-SOTO
DEFENDANT